## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

VELTOR UNDERGROUND, LLC,

      Plaintiff,

                             Civil Action No. 23-11183

v.                           HON. JONATHAN J.C. GREY

THE UNITED STATES SMALL
BUSINESS ADMINSTRATION,
ISABELLA CASILLAS GUZMAN,
Administrator of U.S. Small Business
Administration, and JANET YELLEN,
Secretary of the U.S. Department of
the Treasury,

      Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 21), GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT (ECF No. 22), AND DISMISSING PLAINTIFF'S CAUSE OF ACTION

## I.   INTRODUCTION

Plaintiff Veltor Underground, LLC alleges that defendants, including the United States Small Business Administration ("SBA"), Isabella Casillas Guzman (Administrator of the U.S. Small Business Administration), and Janet Yellen (Secretary of the U.S. Department of the Treasury), illegally and retroactively applied an April 15, 2020 rule

to Veltor's April 5, 2020 Paycheck Protection Program loan ("PPP loan") application and that Veltor's $125,000 PPP loan should be fully forgiven.

The parties have filed cross-motions for summary judgment. (ECF Nos. 21, 22.) Both motions have been fully briefed, and the parties later filed supplemental briefing in light of the United States Supreme Court's ruling in *Loper Bright Enters. v. Raimondo*, 144 S.Ct. 2244, 2273 (2024). Given the adequate briefing, the Court considers the motions without oral argument. E.D. Mich. LR 7.1(f). For the reasons that follow, Veltor's motion for summary judgment is **DENIED**, defendants' motion for summary judgment is **GRANTED**, and this cause of action is **DISMISSED**.

## II.   BACKGROUND

### A.   The CARES Act and the PPP

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), which established the "Paycheck Protection Program" ("PPP"). *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020), codified at 15 U.S.C. § 9001, et seq. A purpose of the CARES Act was to "keep . . . American workers paid and employed," and to "assist

small businesses nationwide adversely impacted by the COVID-19 emergency." 15 U.S.C. Ch. 116, Subchapter I; Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811 (April 15, 2020). The SBA was tasked with implementing the PPP. *Id*. Congress also provided that, "[n]ot later than 15 days after March 27, 2020, the [SBA] shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5." *See* 15 U.S.C. § 9012 (footnote omitted).

Upon the enactment of the CARES Act, Congress allocated $349 billion to the first round of the PPP, otherwise called the "First Draw." *See* CARES Act § 1102, 134 Stat. at 293. Congress then appropriated an additional $310 billion for First Draw loans in April 2020. *See* Paycheck Protection Program and Health Care Enhancement Act § 101, Pub. L. No. 116–139, 134 Stat. 620 (April 24, 2020).

Prior to the CARES Act, the SBA was required to treat certain classes of businesses as ineligible for similar SBA lending programs. *See* 13 C.F.R. § 120.110. Congress purposefully crafted the CARES Act to provide "increased eligibility" for forgivable PPP Loans and made these loans widely available across the commercial spectrum. 15 U.S.C. §

3

636(A)(36)(D). The CARES Act expanded the types of borrowers eligible for loans by adding § 636(a)(36)(2)(D), entitled "Increased Eligibility for Certain Small Businesses and Organizations," and explicitly offered covered loans to "any business concern, nonprofit organization, veterans organization, or Tribal business concern . . . if [the borrower] employs not more than the greater of" 500 employees; or "the size standard of the number of employees . . . for the industry[.]" *See* 15 U.S.C. § 636(a)(36)(D)(i).

The CARES Act states that, in determining eligibility for a borrower of a covered loan, "a lender shall consider whether the borrower—(aa) was in operation on February 15, 2020; and (bb) (AA) had employees for whom the borrower paid salaries and payroll taxes; or (BB) paid independent contractors, as reported on a Form 1099-MISC." *See* 15 U.S.C. § 636(a)(36)(F)(ii)(II). The CARES Act instructs borrowers and lenders to calculate the "maximum loan amount" that a company may claim in its PPP loan application using a business's "payroll costs." 15 U.S.C. § 636(a)(36)(E).

The CARES Act defines "payroll costs" as:

(aa) the sum of payments of any compensation with respect to employees that is a—(AA) salary, wage, commission, or

similar compensation; (BB) payment of cash tip or equivalent; (CC) payment for vacation, parental, family, medical, or sick leave; (DD) allowance for dismissal or separation; (EE) payment required for the provisions of group health care benefits, including insurance premiums; (FF) payment of any retirement benefit; or (GG) payment of State or local tax assessed on the compensation of employees; and (bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment or similar compensation that is in an amount that is not more than $100,000 in 1 year, as prorated for the covered period[.]

15 U.S.C. §636(a)(36)(A)(viii)(I).

The CARES Act sets forth types of compensation excluded from the definition of "payroll costs." Among the excluded compensation was "the compensation of an individual employee in excess of $100,000" annually, and compensation paid to an "employee" who resides outside the United States. *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II) at (aa), (cc). Compensation paid to independent contractors in those same categories was not among the express exclusions contained in 15 U.S.C. § 636(a)(36)(A)(viii)(II). In fact, SBA Form 2483 required every PPP loan applicant to certify that it either "had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." (*See* A.R.

0058;[1] (SBA Form 2483, "PPP First Draw Borrower Application Form" (emphasis added)).) With respect to the PPP, the SBA stated that "Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application."[2]

## B.    Veltor's PPP Loan

On April 5, 2020, Veltor submitted its PPP loan application dated April 3, 2020 to its lender, Bank of America, National Association (the "Lender"), based on a maximum loan amount of $125,000. (*See* A.R. 0015–0016, 0053–0058.) Veltor claims that it calculated its maximum loan amount based on "payroll costs," as defined by the CARES Act, which Veltor interpreted to include compensation it had paid to its independent contractors. (*See* A.R. 0064, 0081; 15 U.S.C. § 636(a)(36)(A)(viii)(I).) Veltor did not have any W-2 employees, and all compensation it paid was to independent contractors. (A.R. 0033.)

After the date of Veltor's PPP loan application and pursuant to authorization by Congress, various interim final rules and frequently

---

[1] Citations herein to "A.R." refer to the Administrative Record filed under seal in this action at ECF No. 20.

[2]   https://www.sba.gov/sites/default/files/2023-03/Final%20PPP%20FAQs.pdf   (SBA FAQ #17 (April 6, 2020)).

asked questions interpreting the parameters of the PPP loan program were implemented. The first Interim Final Rule (hereinafter "the IFR") was not effective until April 15, 2020, but it was available on the SBA's and the Department of Treasury's websites on April 2, 2020.[3] Among the content available on the SBA's and the Department of Treasury's websites on April 2, 2020 were the following question and answer:

> h.  Do independent contractors count as employees for purposes of PPP loan calculations?
>
> No, independent contractors have the ability to apply for a PPP loan on their own so they do not count for purposes of a borrower's PPP loan calculation.

85 Fed. Reg. at 20813. Likewise, independent contractors did not count for purposes of a borrower's PPP loan forgiveness. 85 Fed. Reg. at 20814.

According to the U.S. Department of the Treasury, independent contractors could not begin applying for a PPP loan on their own until April 10, 2020.[4] That was five days after Veltor had submitted its PPP loan application to the SBA.[5] By its own terms, IFR did not become

---

[3] *See Seville Indus. LLC v. U.S. Small Bus. Admin.*, No. 6:22-CV-06229, 2024 WL 697592, at *7 (W.D. La. Feb. 20, 2024). Plaintiff's appeal to the Fifth Circuit Court of Appeals was docketed on March 19, 2024. The Fifth Circuit has not issued a ruling.
[4] *See* https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf.
[5] Previously available at *https://home.treasury.gov/system/files/136/PPP%20--%20Overview.pdf*. At the time Veltor filed its motion, it believed this webpage had

effective until April 15, 2020, *see* 85 Fed. Reg. at 20811, and had "no preemptive or retroactive effect." *Id.* at 20817.

On May 1, 2020, Veltor's PPP loan application for $125,000 was approved and fully funded by the Lender. (A.R. 0013, 0162.) The Lender deposited the loan proceeds into Veltor's business checking account the same day. (A.R. 0084.) Veltor asserts that it applied for and utilized the proceeds of the PPP loan "to protect the continued employment of its workers." (ECF No. 21, PageID.317 (citing A.R. 0055 (certifying that Veltor would use its PPP Loan funds to "retain workers and maintain payroll").) During its 24-week covered period, Veltor utilized at least 60% of the PPP funds for "payroll expenses." (ECF No. 21, PageID.317 (citing A.R. 0058).)

On or about February 26, 2021, Veltor submitted its PPP Loan forgiveness application to the Lender, seeking full forgiveness of the PPP loan. (A.R. 0046-0052.) On October 26, 2022, the SBA informed the Lender that the loan forgiveness requested by Veltor was denied, requiring Veltor to pay back the full amount to the SBA, with interest.

---

been removed from the U.S. Department of the Treasury's website. The Court also could not find the webpage when it last looked on September 24, 2024.

(A.R. 0013-0014.) The SBA's forgiveness decision concluded that Veltor was ineligible to receive the PPP loan proceeds because, in its original loan calculation, Veltor's payroll costs had been based on payments made to independent contractors. (*See* A.R. 0013-0014 ("The only wages paid were via 1099's which are ineligible. No other eligible wages were provided to include in the Origination calculation.").) The SBA's forgiveness decision cited no statutory or regulatory support for this determination. *Id.*

On November 23, 2022, Veltor filed an appeal of the SBA's forgiveness decision with the SBA's Office of Hearings and Appeals ("OHA"). (A.R. 0001–0012.) On March 21, 2023, the OHA issued an "initial decision" upholding the SBA's decision to deny full forgiveness of Veltor's PPP loan. (A.R. 0184–0196.) The OHA's initial decision became an appealable, final decision 30 calendar days later, on April 20, 2023. *See* 13 C.F.R. § 134.1211(c)(3). Veltor filed this action on May 18, 2023.

## III.   LEGAL STANDARDS

### A.   Rule 56 – Summary Judgment

The Rules of Civil Procedure provide that the court "shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322–23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## B.   Administrative Procedures Act

Courts must review agency actions under the Administrative Procedures Act (the "APA"). Pursuant to the APA, a reviewing court should set aside an agency decision if that decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A). Courts "must take care not to merely rubber stamp agency decisions. Rather the court must ensure that the agency took a hard look at all relevant issues and considered reasonable alternatives." *See Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1004 (6th Cir. 1995).

"The APA establishes a scheme of 'reasoned decisionmaking.'" *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 475 (6th Cir. 2004). "It requires the party challenging the agency's action to 'show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* (citation omitted). "If there is any evidence to support the agency's decision, the agency's determination is not arbitrary or capricious." *Id.* Judicial review

11

under the arbitrary or capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Cherokee Forest Voices v. U.S. Forest Serv.*, 182 F. App'x 488, 493 (6th Cir. 2006) (noting a "highly deferential standard"). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Prometheus*, 592 U.S. at 423.

## IV.   CROSS MOTIONS FOR SUMMARY JUDGMENT

Veltor asks the Court to vacate and set aside the OHA's decision denying forgiveness of its PPP loan and require the SBA to grant full forgiveness of its PPP loan. Defendants move the Court to affirm the OHA's decision to deny Veltor's request to forgive its PPP loan. The parties focus on, and the Court's analysis turns on, how to interpret the term "payroll costs" under the CARES Act, including 15 U.S.C. § 636(a)(36)(A)(viii).

At the outset, the Court notes that Veltor's complaint and motion for summary judgment are substantively identical to the like pleadings by the plaintiff in *Seville Industries LLC v. U.S. Small Business*

12

*Administration*, No. 6:22-CV-06229, 2024 WL 697592 (W.D. La. Feb. 20, 2024). This is not surprising, as Veltor's primary counsel in this case is one of plaintiff's attorneys in *Seville*. As discussed below, the *Seville* court rejected the plaintiff's position and, to the extent the plaintiff's PPP loan was based on payroll costs attributable to independent contractors, upheld the SBA's decision to deny PPP loan forgiveness. This Court ultimately reaches the same conclusion.

### A.   No Arbitrary and Capricious Conduct by Defendants

Veltor argues that there is an "Independent Contractor Rule" ("ICR") based on the IFR promulgated by the SBA. Veltor contends that the ICR provides that payments by a PPP loan applicant to independent contractors could not be included in the applicant's loan calculation or loan forgiveness. 85 Fed. Reg. at 20813–20814. Veltor asserts, since the IFR had "no preemptive or retroactive effect," *id.* at 20817, the ICR did not become effective until April 15, 2020. Veltor believes the ICR could not be applied to a PPP loan application completed prior to April 15, 2020. Specifically, Veltor insists that the ICR could not be applied to Veltor's PPP loan application submitted on April 5, 2020 and, by doing so, the SBA acted arbitrarily and capriciously. If Veltor is correct, it had the

right to include the compensation paid to independent contractors for purposes of its loan calculation and loan forgiveness, and its PPP loan should have been forgiven.

The Court agrees with Veltor that the IFR did not become effective until April 15, 2020. And, if defendants solely relied on the IFR to justify their denial of Veltor's request for forgiveness of Veltor's PPP loan, the Court might have adopted Veltor's ICR position and granted Veltor's motion set forth in a non-binding decision rendered by the OHA in August 2022.[6] (*See* ECF No. 20, PageID.122–128.)

On August 9, 2022, the ALJ held that the IFR was not in effect on April 5, 2020, the date of the borrower's PPP loan application. (*Id.* at PageID.127 ("Given the binding effective date of the IFR, I find that the Appellant was not bound by the IFR at the time it submitted its PPP loan

---

[6] Unlike the *Seville* court, this Court does not conclude that the absence of a notice requirement means that the IFR parameters were in place on April 2, 2020, when they were published on the SBA's and Department of Treasury's websites. *See Seville*, 2024 WL 697592, at *7. As noted above, acting on its statutory mandate, the SBA issued the IFR, which did not require notice. *See* 15 U.S.C. § 9012 (footnote omitted) (emphasis added) ("Not later than 15 days after March 27, 2020, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5."). The fact that the notice requirement was waived, however, does not change the fact that the effective date of the IFR was April 15, 2020. Therefore, if there was an ICR instituted pursuant to the IFR, it would not have been effective until April 15, 2020, 10 days after Veltor submitted its PPP loan application.

application.").) The ALJ reasoned that "[a]pplying the [Interim Final R]ule to all PPP loans – even those prior to the effective date — would contradict the plain language of the IFR that it has 'no preemptive or retroactive effect.'" (*Id.*) The ALJ determined that the SBA's retroactive application of the IFR to a loan application filed on April 5, 2020 was "clear error" and concluded that the borrower was entitled to forgiveness of its PPP loan with respect to any payments to independent contractors the borrower relied upon in its calculations. (*Id.* at PageID.128.) On December 22, 2022, the ALJ upheld that August 9, 2022 OHA decision upon reconsideration. (ECF No. 21, Ex. A.)

The sole issue before the ALJ in that matter was whether the IFR could be retroactively applied especially because the IFR was on the SBA's and Department of Treasury's websites on April 2, 2020. (ECF No. 20, PageID.127.) The SBA did not present any other basis for denying the borrower's request for PPP loan forgiveness. (*Id.*) The same cannot be said in this case. Although defendants in this case cite to the IFR and the fact that it was on the SBA and Department of Treasury websites as of April 2, 2020, defendants center their arguments elsewhere. Defendants assert that the CARES Act as a whole does not provide that payments by

a business to an independent contractor can be included in the business's "payroll costs" for purposes of a PPP loan or PPP forgiveness. The Court now turns to those arguments.

At the core of Veltor's claim that the SBA wrongfully denied Veltor's request for its PPP loan forgiveness is the term "payroll costs" under the CARES Act, specifically 15 U.S.C. § 636(a)(36)(A)(viii). If the Court were reading § 636(a)(36)(A)(viii) in isolation, it would probably agree with Veltor's theory that independent contractor compensation should be included in PPP loan calculations. In pertinent part, § 636(a)(36)(A)(viii) provides that "payroll costs" are: "(aa) the sum of payments of any compensation with respect to employees . . . ; **and** (bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is . . ." *Id.* (emphasis added).

Veltor asserts that the ordinary meaning of "payroll costs," including parts (aa) and (bb) should be read in the conjunctive. (ECF No. 21, PageID.324 (citing *e.g.*, ANTONIN SCALIA & BRYAN A. GARNER, Reading Law: The Interpretation of Legal Texts, 116–1125 (2012); BLACK'S LAW DICTIONARY (10th ed. 2014) ("in a legal instrument, 'and' joins a conjunctive list to combine items, while 'or' joins a disjunctive list to

16

create alternatives.").)   In other words, Veltor believes "payroll costs" means: (1) the aggregate of compensation paid to employees; plus (2) compensation payments to independent contractors. Veltor maintains that, if Congress intended otherwise, Congress would have used the word "or" instead of "and."

Defendants counter that the use of the word "and" between parts (aa) and (bb) should be read in the "distributive sense." By distributive sense, defendants mean that Congress intended to permit as "payroll costs" <u>either</u>: (1) in part (aa), the total amount a business paid as compensation to its employees; <u>or</u> (2) in part (bb), the total amount of compensation independent contractors received or paid to themselves as self-employed persons. Defendants insist "payroll costs" did not mean the total of the amounts in both parts (aa) and (bb). The *Seville* court agreed with the defendants' position, 2024 WL 697 592, at *6 and n.6.

The Court finds that, if read in a vacuum, the text of § 636(a)(36)(A)(viii) itself is unambiguous and supports Veltor's argument. Parts (aa) and (bb) are joined by the word "and," for which the ordinary meaning is conjunctive. Moreover, the language in that section does not indicate why a business could not compensate both employees and

17

independent contractors. It is not unusual, and may even be common, for a business to do so.[7] The Court likewise is not persuaded that the absence of the term "the sum of" prior to parts (aa) and (bb), as opposed to within each of parts (aa) and (bb), detracts from Veltor's argument as it relates to § 636(a)(36)(A)(viii), at least when read in isolation, without considering the balance of the CARES Act.

Ultimately, however, Veltor's argument is not persuasive. As Veltor acknowledges, the Court must consider the language of the **<u>entire statute</u>**, not simply a section of the statute. (ECF No. 21, PageID.323 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989).); *Ford Motor Co. v. United States*, 786 F.3d 580, 587 (6th Cir. 2014) (courts "must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

As the *Seville* court stated:

> As this issue presents a question of statutory interpretation, the Court must first begin with the text of the statute itself. *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 961

---

[7] The Court also notes Veltor's arguments regarding "compensation to . . . [an] independent contractor" in part (bb) and agrees that, when considering § 636(a)(36)(A)(viii) in a vacuum, such costs would be included in "payroll costs."

> (5th Cir. 2019). If the text is unambiguous, the analysis ends
> there. *Bedrock Ltd., LLC v. United States*, 541 U.S. 176, 183
> (2004); *United States v. Ary*, 892 F.3d 787, 789 (5th Cir. 2018).
> The "cardinal canon" of statutory interpretation requires
> courts to "presume ... a legislature says in a statute what it
> means and means in a statute what it says there." *Connecticut
> Nat. Bank v. Germain*, 503 U.S. 239, 253-254 (1992).

*Seville*, 2024 WL 697592, at *5.[8] A court has a "duty to construe statutes, not isolated provisions." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010). Further, provisions "must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023).

For the reasons that follow, when viewing the CARES Act as a whole, the Court concludes that the SBA's determination that part (aa) (addressing payments to employees) and part (bb) (addressing payments

---

[8] The *Seville* court further stated that, "If 'the agency's answer is based on a permissible construction of the statute,' that is the end of the matter. *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 307, 133 S. Ct. 1863, 1874–75, 185 L. Ed. 2d 941 (2013) (*citing Chevron*, 467 U.S. at 842, 104 S. Ct. 2778)." *Seville*, 2024 WL 697592, at *5. Since *Seville* was decided, however, *Chevron* (*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984)) has been overruled. *See Loper Bright*, 144 S.Ct. at 2273. Accordingly, the Court does not defer to the SBA's answer for purposes of deciding this matter.

to independent contractors) are separate considerations was not arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A), and falls within a zone of reasonableness. *Promethueus*, 592 U.S. at 423.

As noted above, § 636(a)(36)(A)(viii)(I) does not provide that "payroll costs" include "the sum of" payments in (aa) and (bb). However, Congress did specify in other provisions of the PPP that the itemized costs to be considered must be calculated as "the sum of" the items listed in the subsections or subparts in the level(s) below the section in which "the sum of" was written. The *Seville* court explained:

> For example, Congress directed in Section 636(a)(36)(E)(i)(I) that a borrower's maximum PPP loan amount be calculated as "the sum of" items (aa) (payroll costs times 2.5) and (bb) (any EIDL loan balance) listed thereunder. Similarly, the maximum loan amount for a farmer or rancher without employees is calculated, per Section 636(a)(36)(V)(ii)(I), as "the sum of" items (aa) (2019 monthly gross income times 2.5) and (bb) (any EIDL loan balance) listed thereunder. *See also* 15 U.S.C. § 636m(b) (specifying in subsection (b) that the forgiveness amount shall be "the sum of" the expenses listed thereunder in paragraphs (1)-(8)). Here, Section 636(a)(36)(A)(viii)(I) states that "payroll costs" means employee compensation as set forth in item (aa), and, separately, compensation to or income of sole proprietors and independent contractors as set forth in item (bb). In other words, (aa) and (bb) were not meant to be added together to create a "sum." The text of the statute is clear that for small business employers, "payroll costs" means employee-compensation costs, while, for the self-employed – including independent contractors who were not classified as employees

20

> and could obtain PPP loans of their own – "payroll costs"
> means the income or compensation they earned for
> themselves.

*Seville*, 2024 WL 697592, at *6 (footnote omitted). For the same reasons,

this Court finds that, for purposes of § 636(a)(36)(A)(viii), "'payroll costs'

means both things, not the sum of both things." *Id.* at n.6. When

considering the CARES Act as a whole, this interpretation affords a

logical, "symmetrical and coherent regulatory scheme." *FDA v. Brown &*

*Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

The Court concludes Veltor's proposed interpretation is

inconsistent with the CARES Act when the CARES Act is considered in

its entirety. Most significantly, as the questions and answers section of

the IFR reflects, independent contractors could seek their own PPP loan

under the CARES Act. *See* 15 U.S.C. § 636(a)(36)(D)(ii); *see also* 85 Fed.

Reg. at 20813. Adopting Veltor's position would mean that an

independent contractor could be the beneficiary of "double-dipping" by

receiving: (a) his own loan; and (b) the proceeds of a loan obtained by a

business for the purpose of making payments to that same independent

contractor.

Several provisions of the CARES Act demonstrate Congress's intent

to consider employees and independent contractor separately. One example, although not pertinent in this case due to Veltor's loan amount, is the process for obtaining partial PPP loan forgiveness for loans over $150,000. Under those circumstances, forgiveness requires certain certifications tied to employees but not independent contractors. *See* 15 U.S.C. § 636m (for purposes of certifying a request for forgiveness, a borrower must document the number of the borrower's employees and the amounts used to retain them in order to qualify for partial PPP loan forgiveness). The absence of a similar documentation requirement for independent contractors suggests that Congress did not intend to include independent contractors in "payroll costs."

Another example is that, as an incentive to businesses to retain employees, Congress provided that the amount of a business's PPP loan forgiveness for "payroll costs" may be reduced if the business laid off employees or cut employees' pay after obtaining the PPP loan. *See* 15 U.S.C. §§ 636m(b), 636m(d)(2), (3). This is consistent with the CARES Act objective to keep persons employed. There is no corresponding provision to reduce the forgiveness amount for dismissing independent contractors.

If "payroll costs" included both employees and independent contractors, as Veltor suggests, each of those § 636m provisions is nonsensible because a business would have an incentive to utilize independent contractor relationships to obtain a PPP loan. With no penalty for terminating an independent contractor, a business could immediately terminate the independent contractor and still keep all the loan proceeds. This certainly would not further the purpose of the CARES Act, which is to keep workers employed and compensated.

Veltor's argument is further undermined by the fact that the CARES Act excludes from "payroll costs" "the compensation of an individual employee in excess of $100,000" annually and compensation paid to an "employee" who resides outside the United States. *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II)(aa), (cc). Because independent contractors are not similarly excluded from "payroll costs," under Veltor's theory a business could seek PPP loans for foreign-based independent contractors (but not foreign-based employees), as well as for highly compensated independent contractors (but not highly compensated employees). Neither of those results is consistent with the purposes of the CARES Act.

The fact that Congress has amended the provisions of the PPP on two occasions supports the conclusion that independent contractors are to be treated separately for purposes of "payroll costs." Despite those amendments, Congress did not (a) alter the IFR's directive that payments to contractors "do not count for purposes of a borrower's PPP loan calculation" or "loan forgiveness," 85 Fed. Reg. at 20813, 20814; or (b) otherwise change the definition of "payroll costs" with respect to independent contractors. *See* PPP Flexibility Act, 15 U.S.C. § 636m(d)(8) (June 5, 2020) (reducing from 75% and 60% the percentage of PPP loan proceeds that had to be spent on payroll to qualify for forgiveness); Consolidated Appropriations Act (December 27, 2020) (adding benefits that a business could count as <u>employee</u> compensation when calculating "payroll costs" and specifying that term does not include amounts the borrower relies upon for certain employee-retention tax credits). "Where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512535 (1982) (internal quotes and

citation omitted).

Finally, the Court agrees with the *Seville* court that:

> [The] IFR is properly considered an interpretive regulation meant to clarify the scope and breadth of the PPP. Interpretative rules "advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97, 135 S. Ct. 1199, 191 L. Ed. 2d 186 (2015), quoting *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995).

*Seville*, 2024 WL 697592, at *7. The Sixth Circuit has long held the same view:

> A rule clarifying an unsettled or confusing area of the law does not change the law, but restates what the law according to the agency is and has always been: It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.

*Orr v. Hawk*, 156 F.3d 651, 654 (6th Cir. 1998) (internal quotation and citation omitted). As noted above, the CARES Act expressly provided the SBA the power to enact regulations regarding the administration of the PPP. *See* 15 U.S.C. § 9012 (footnote omitted) ("Not later than 15 days after March 27, 2020, the [SBA] shall issue regulations to carry out this title and the amendments made by this title . . ."").

The Court finds that the IFR's discussion regarding whether independent contractors are to be considered when calculating "payroll

costs" is consistent with the language of the CARES Act itself. The question and answer in the IFR only clarified what the CARES Act provided; it does not create or make retroactive any rule or application. Accordingly, "[s]uch a regulation 'constitutes only a step in the administrative process' and 'is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.'" *Seville*, 2024 WL 697592, at \*7 (quoting *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 135 (1936)).

For all these reasons, the Court declines to adopt Veltor's argument that payments to both independent contractors and employees should be included in the calculation of "payroll costs" for purposes of 15 U.S.C. § 636(a)(36)(A)(viii). And, because the Court concludes that the CARES Act does not allow payments by a business to an independent contractor to be included in the business's "payroll costs," Veltor's contention that the ICR was improperly retroactively applied to its PPP loan is rendered irrelevant. The Court further concludes that the SBA's decision was not arbitrary and capricious, as the SBA did not retroactively apply any rule, including the ICR, to Veltor's PPP loan. The Court therefore finds that Defendants are entitled to judgment as a matter of law.

## B.   Veltor's Equitable Estoppel Arguments Lack Merit

Veltor argues that equitable estoppel and principles of fundamental fairness and due process support vacating the OHA decision and granting full forgiveness of its PPP loan. Those arguments generally are not successful against government agencies. *See, e.g., Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422 (1990) (emphasis added) ("In sum, Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed. Indeed, no less than three of our most recent decisions in this area have been summary reversals of decisions upholding estoppel claims."). Further, as the Sixth Circuit has stated, "at the very minimum, some affirmative misconduct by a government agent is required as a basis of estoppel." *Est. of James v. U.S. Dep't of Agric.*, 404 F.3d 989, 995 (6th Cir. 2005). Affirmative misconduct requires "more than mere negligence . . . It is an act by the government that either intentionally or recklessly misleads the claimant." *Id.*

Here, the Court does not find that Veltor's reliance on the language of the CARES Act, and especially its belief that its PPP loan would be

forgiven based on the language in § 636(a)(36)(A(viii), supports awarding equitable relief. Again, while limiting one's focus on §636(a)(36)(A(viii) could support Veltor's theory, it is but one part of the CARES Act. Veltor's misunderstanding or misinterpretation of the statute does not warrant equitable relief against the SBA, especially as Veltor has not identified any affirmative misconduct by any defendant and certainly no action by any defendant that intentionally or recklessly misled Veltor.

Finally, as discussed above, the Court finds that the SBA's interpretation of the CARES Act and its promulgation of the IFR were not arbitrary and capricious, which is necessary for a finding of a substantive due process violation. *See, e.g., Koenigs, L.L.C. v. City of Savannah, Tennessee*, 2019 WL 1186863, at *2 (W.D. Tenn. Mar. 13, 2019) (citing *Paterek v. Village of Armada*, 801 F.3d 630, 648 (6th Cir. 2015)).

Accordingly, the Court finds no merit in Veltor's equitable estoppel, fundamental fairness, and due process claims.

## V.   CONCLUSION

Accordingly, and for the reasons stated above, **IT IS ORDERED** that Veltor's motion for summary judgment (ECF No. 21) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' cross motion for summary judgment (ECF No. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Veltor's claims against defendants SBA, Guzman, and Yellen are **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

<u>**s/Jonathan J.C. Grey**</u>

Date: September 26, 2024        Jonathan J.C. Grey
                                United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 26, 2024.

**s/ S. Osorio**
**Sandra Osorio**
**Case Manager**
